The next case today is United States v. Deovane Carter, Appeal No. 20-1953. Attorney Solomon, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. May it please the Court, my name is Joshua Solomon and I represent the appellant Deovane Carter in this appeal. Chief Judge Howard, may I please reserve two minutes for rebuttal? Yes. Thank you, Your Honor. This appeal raises three issues concerning Mr. Carter's trial, conviction, and sentence. We've raised an evidentiary issue, an issue concerning the jury instructions, and an issue regarding the sentencing guidelines. The evidentiary issue is one of hearsay involving the District Court's admission of a recorded jailhouse call by one of Mr. Carter's co-defendants, Darius Carter. The prosecution and the District Court appeared to agree during Mr. Carter's trial, during Deovane Carter's trial, that the contents of the call contained an implicit statement of fact to the effect that Mr. Carter was a participant in the robbery and a member of the conspiracy charged. What the dispute thus focuses on regarding this evidence is not on whether there was an implied statement of fact, but whether that implied statement constitutes hearsay. The government's position here on appeal is that it is not hearsay because Darius did not intend to convey anything. And for that argument, the government relies on case law involving questions asked by out-of-court speakers. The two cases in particular the government relies on are Long from the D.C. Circuit and Love from the Seventh Circuit. And the flaw in the reliance on those cases, Your Honors, is that they involved questions, not assertions, where the questions were clearly intended to elicit information, not to convey facts. Here, in contrast, the statement itself makes clear that Darius Carter intended to convey facts, not to ask a question to elicit information, and not even just to give an instruction as the government has argued here. You do have an instruction. The instruction is tell Deovane not to speak, or words to that effect. But then you also have a basis for that instruction. You have Darius Carter providing facts to support the instruction, or in other words, to provide motivation for compliance with the instruction. The government itself has described what Darius Carter was doing here as... If you could explain something to me. I believe counsel for the defendant below indicated that at least one of the statements was not hearsay because it's a command. You agree with that? Yes, Your Honor. In your briefs, you now indicate that all of the statements are commands, but there's an implied assertion in those commands. Is that correct? Not quite, Your Honor. Our position is that there were two sentences that were instructions. In the brief below on the motion in limine, trial counsel argued that the entirety of Then in an oral argument, trial counsel conceded again that those statements were not hearsay, that they were instructions. Our argument here is that those two sentences... Therefore admissible, correct? The two sentences that constitute instructions are admissible, correct? Okay. In your brief, your argument, just so I'm clear, is that all of the statements are commands, but commands may have within them an implied assertion. Is that correct? It is certainly true that commands may have an implied assertion, but our argument... Is it your position that all of them are commands, but should not have been admitted because there's an implied assertion within the commands? No, Your Honor. The argument, our argument on appeal is that the language that followed the two sentences that were commands were Mr. Carter then, Darius Carter, sorry, explaining those commands, is giving, as the government has called it, an excerpt. Here's what's confusing me. I think it's the same thing that may be confusing Judge Singal. In your reply brief, you do split up the statement in question between assertions and instructions, but in your opening brief, as I read it, your focus seems to be that there is an implied assertion in the instructions. I don't see anything in the opening brief identifying aspects of the statement that are not instructions and are just assertions. Well, Your Honor, I think the... Because if you were making that argument, this implied fact point wouldn't make a whole lot of sense. The reason you have to make an argument about implied facts is because if it's an instruction, you can say there's an implied assertion, but if it's just an assertion, it's just an assertion. Now you're saying, which I do think you argued below, and which it does look like you say in your reply brief, you now seem to be saying to us, there are aspects of the overall statement in question which are simply not instructions but are just flat-out assertions. Is that your position? I think the confusion, Your Honor, may be, and I apologize if the brief was confusing. Is that your current position, that the overall statement contains within it flat-out assertions that are not instructions? I think the assertions, Your Honor, are implied, and I think the confusion may be... You just need to answer this question and say yes or no. There are clearly instructions in the statement, correct? Yes. Okay. There are also... Is there anything in the statement that is not an instruction in your view? Yes. Okay. Those portions that are not an instruction, are they assertions? Yes, Your Honor. Okay. That's independent of the argument of whether there's an implied fact in the instruction. That's just a straight-out statement that there are assertions. That is correct, Your Honor. And you argued that below, correct? Yes, trial counsel did, yes.  Yes, Your Honor. Where in your opening brief do you make that argument? I'd have to flip through the brief to find the exact point. The argument, though, Your Honor, is that the parts that are assertions, and that have implied statements of fact within them, they are an explanation... An assertion doesn't have an implied. The assertion is a statement of fact. That's why it's an assertion. But it was admitted for... The statement of fact that was admitted for its truth is implied. Yeah. So... I see. So the reason you're talking about implied is that you were, to the extent the district court was taking the view that even the assertions could be admitted because those assertions weren't for the truth of the matter, you are trying to make the argument, yes, they were for the truth of the matter. They weren't disclaiming the argument below that there were flat-out assertions in the statement. That's right, Your Honor. So I have now my brief open, and so when Darius Carter said we already have the ENCODE defendant snitching, that's an assertion, that's not an instruction. He's stating a fact, but the implied fact is Mr. Carter's involvement, that Mr. Carter is himself one of the we being discussed here. So it's still an implied fact case, but the pure instruction... Was anybody arguing, did the government argue that that statement was not being admitted for its truth? I mean, what else would it be admitted for? The government, no, the government actually contended, and this is why I think there's no dispute that there's an implied fact at issue here, because the government used it for exactly that implied fact. That was its statement of relevance, right? Its statement of relevance was the implied fact of Mr. Carter's involvement, and that Suppose the assertion is now we're focusing not on the instruction, we're focusing on the codee statement. Yes, it would follow, yes. Independent of whether that statement was being admitted for the purpose of showing that your client was involved, isn't it still being admitted for the truth content of the statement itself? The reason the government wanted to use it, and the reason that... You're not answering my question, though. Just answer my question right now. Isn't it still being admitted for the truth of the statement, regardless if we get to the question, was it implying something about your client? Just the statement, that part of it's being admitted for its truth, isn't it? Your Honor, I think, unless I'm misunderstanding Your Honor's question, I think it was being admitted for my client's involvement. I don't think it was being admitted for the truth of the actual statement of the involvement of the person saying it. Because that's not the reason that the government asked to have it admitted, and that's not the basis on which the court admitted it. Even if not, wouldn't it, if it were admitted on that basis, wouldn't it still be admitted for its truth? If it were admitted on that basis, then yes. That would be helpful to you. In other words, even if we don't get to the implied, that statement is being admitted for its truth, and yet it's still a hearsay, correct? It would still be hearsay. I think it would be irrelevant, but it would be hearsay, yes. If one were to disagree with you about the relevance, you still would be right that it's hearsay. Yes, because it's a statement of fact that's being admitted for the truth of that statement. That's right. Was that argument made below? That very simple argument? Trial counsel made the argument that the statement was hearsay, and trial counsel made the argument that it was irrelevant in any event. He made both of those arguments. He didn't parse it in quite the way that Your Honor is parsing it by saying that even if it were admitted for a different purpose than the government said it wanted it for, that it would still be hearsay and still admissible. That specific nuance. Did you make that argument in your opening brief? I'm sorry, Your Honor? Did you make that argument in your opening brief, or did you rather argue that they are instructions, but the instructions have an implied assertion? Yes, Your Honor. We made that second argument that Your Honor just elicited, but I think what I think is perhaps- If you made that argument that they are all instructions, but should be excluded because they're implied assertions, aren't you waiving the argument that they're anything other than instructions? No, Your Honor, because when we described them as instructions, we were talking about the passage as a whole, and as we clarified in our reply brief in response to what the government pointed out, that the second part of the statement that was admitted is, as the government called it at trial, part of the exhortation not to speak. So, in one sense, this entire passage is an instruction. It's the actual instruction followed by the basis for the instruction. So, we referred to it, I think, in the broad sense of this was Mr. Carter giving instructions that had an implied statement, but the reason it had the implied statement is because he goes on to explain the basis of this instruction. So, now that the government has made this argument in its answering brief about waiver, this is how this distinction came up, because the government contended in its answering brief that Mr. Carter's trial counsel conceded that there was no hearsay here. We clarified and explained in our reply brief, well, the government is missing the point that that concession concerned only the first two statements that were pure instructions. The second part are explanations of fact offered to motivate compliance with the instructions. So, certainly the reply brief has a more nuanced argument than the opening brief in response to what the government argued, but the overall recording is for the purpose of Darius Carter giving an instruction, but he does more than just give a pure instruction. He goes on to make statements of fact that have further implied statements as to my client's involvement. Why isn't this, even if error, harmless? You've got a co-defendant testifying against your client. You don't touch in your brief the Google history search that was made, the car rental agreement, the mail that was found in the car addressed to your client. All of that seems to give a very strong case for the government aside from these two, three sentences that were introduced into trial. Don't you agree? So, I don't agree, Your Honor, but to your specific question of why isn't it harmless error? The government, first of all, has not argued on appeal that this is harmless error. It's a high burden for the government for preserved error, of course. Under this court's Ocasio-Ruiz standard, it's highly probable that the error did not contribute to the verdict. And I just don't think we can say that in this case where the identity of the fourth co-conspirator was the issue for trial. The government relied so heavily on this recording at trial. It gave the jury transcripts. It played the recording for the jury. It played it again in closing argument. It made arguments about closing argument. And a significant part of the evidence the government relies on, of course, is this cooperating witness whose testimony was suspect for other reasons we discuss in the brief. And we know the jury rejected at least a portion of that person's testimony by acquitting Mr. Carter on the felon in possession charge. So, I do not believe the government could satisfy. And for that reason, I think that's probably why the government did not argue here that it's highly probable. Mr. Solomon, your time is up, but would you spend one minute on the jury instruction claim of error? Yes, Your Honor. So, the dispute here really has two parts to it. Did the district court actually instruct the jury on the mens rea requirements? And second, is there a mens rea requirement, in fact, required for the discharging element? And we've broken the instructions in our brief down to show, I believe, how the district court did not give the instruction. But perhaps the clearest indication is that the district court itself clearly transitions, expressly transitions, from instructing on the underlying 924C1A violation to instructing on discharging or brandishing specifically. And the district court says, quote, if you find the defendant guilty of using or carrying the firearm during the commission of a crime or violence, you must then determine whether or not the government has proven beyond a reasonable doubt that the firearm was also brandished or discharged. And the district court then never tells the jury that you have to find the requisite mindset elements for either aiding and abetting or Pinkerton co-conspirator liability. I've gone on for more than a minute. Chief Justice, I want to be respectful of the clock, so I'm happy to keep going. But I ask you for your. I would like to do a follow up if you have a minute, which is I understand the point you're making about the transition in the instructions from describing the substantive crime to the full description of the 924C, what has to be proved. But in the description of the substantive crime, the passage you identify is that where he's not yet made the transition. Am I right that the actual text of that part of the instruction does itself describe a man's right or am I wrong about that? I thought it was a preliminary, like a lead in sentence, which does effectively say that to prove the 924C, you have to have had knowledge of the substantive crime. Yes, it does. The court did do that. Your Honor, before the transition, as your Honor points out, but it's clear in context that there the the court is giving instructions to the jury on how to assess whether a 924C1A violation has happened at all. And it does that in several ways. For one, it's before the transition, but but it also refers to the crime. It refers to the count and then the jury form, of course, asks for a finding of guilty or not guilty on that crime. And then there are two further check marks on brandishing or discharging. I guess what I'm just not following, you're not disputing then that this instruction, as it comes to us, has a sentence in it that is a correct statement of the law? As to the underlying violation? No, as to the requirement that there be knowledge of it. Knowledge of the knowledge of a violation of 924C1A generally, not knowledge of brandishing or discharging specifically. And does that then depend on us agreeing with you about the way to read or? I'm sorry, the way to read? The way to read the listing with or? Does that depend on us agreeing with your conclusion that that is stating one crime that could be committed many different ways as opposed to, as the government says, naturally read to be in parallel to describing the various substantive crimes that could be underlying it? Well, the or is one piece of it, but it doesn't depend entirely on that, Your Honor. There's also the single the crime. And again, this transition point, I think, is critical because it's before the judge transitions. So, it's not dependent entirely on the or, but the or certainly contributes to the argument for why it's clear that District Court was not yet instructing on the specific enhancing factors of discharging and brandishing. So, it helps make it clear that the judge wasn't doing that, but it's not the only point. All right. Thank you, Mr. Solomon. Thank you. You've reserved some time. So, if you would mute, we'll hear from Ms. Eisenstadt. May it please the court, Karen Eisenstadt for the government. So, I'd like to, unless the court has a different preference, go back and speak about the hearsay claim. And the government stands by its claim that this argument is completely waived. And I just, if the court will indulge me, like to go through the procedural history and clarify it a little bit. So, what was admitted here was an instruction and then another portion for context. That's how the District Court, it was discussed below in the District Court. So, first was the instruction. Whenever you all speak to that kid, Dio, that's Dio Vanni Carter, the defendant, just let that end know. Keep his effing mouth closed. Don't even be talking. Then there was another portion that was admitted that was assertive. But the court determined that it was not for the truth of the matter asserted and thus could be admitted as context for the instruction. We already got the end Cody snitching. So, that's the most we need right now. So, that end don't need, he don't need to be running his mouth telling nobody about the case. Nothing. So, there's two chunks here that were analyzed separately. In the defendant's written opposition to the government's motion to admit, he said the instruction, I agree, is not hearsay because instructions are not assertive statements. However, the Cody snitching part is assertive and I'm saying that's hearsay. So, at the pretrial conference, the court asked for argument about hearsay as to, you know, this motion. But only about the Cody snitching portion, the second portion. Because, as the court noted, there was no hearsay objection as to the instruction portion. So, that did not need further discussion. That's at government addendum page 20 from the pretrial conference transcript. The government then argued consistent with its original motion. The Cody snitching part is admissible also, although it's assertive. Because we're not trying to admit that for the truth of the matter. We don't care that the Cody snitching. In fact, the Cody, Dennis Martin, testified at trial and it was obvious he was snitching. He admitted he started snitching as soon as he was caught. So, you know, even if that were an issue, that would be harmless. Or else, the government said, you can admit it as a co-conspirator statement. So, two arguments, alternative grounds as to how the Cody snitching part could be admitted as non-hearsay. The court responded, I'm not comfortable finding an ongoing conspiracy given these facts. I'm not going to use the co-conspirator exception. Quote, but I'm willing, you can have the comment which is not admitted for the truth of the matter. That's in government addendum page 22. And the court here is clearly referring to the Cody snitching comment. Because, one, that's the only thing that anyone had been discussing up to this point in the argument. And two, it was the very part of the call that the government had just argued, it's not for the truth of the matter. We'd like to admit it on that ground. The court then immediately asked defense counsel whether he agreed with what she had just said. It's not admitted for the truth of the matter. Cody snitching is not, it's immaterial. No one actually cares to prove that or disprove it. And he said, all I agree is it's not hearsay. And then went on to make a relevance argument as to the whole call. Because his relevance argument was, in fact, broader. But his concession about it not being hearsay was clearly to the only thing anyone had been discussing in that pretrial conference up to that moment, which was the Cody snitching portion of the call. Putting that together with his concession as to the instruction in his written filing, that is a total waiver of the hearsay issue. And that is why if you look at the way Judge Burroughs wrote her opinion, she doesn't seem to linger very long on any hearsay concerns because all of those at this point had been conceded as not issues. It's either instruction or it's not for the truth of the matter asserted. So here we have two issues, I think, that your honors had pointed out. One, to the extent he's trying to pull out the Cody snitching part now in reply to the government's waiver argument, that's not something he argued in his opening brief. He focused on instructions can contain implied facts. So this is just not an argument that he put on the table before this court. And second, the lack of prejudice. And he said the government didn't argue harmlessness, but the government did argue lack of prejudice because in the government's view, this is all on plain error review if it's not waived. Because there's so much overwhelming evidence that he was the fourth perpetrator here because of his contemporaneous phone records, his mail in the car. It's his rental car. No one else's rental car. And, you know, one of the perpetrators here is his brother. So it's not like he's some random person. Counsel, before you go too far down that path, just on the waiver point, are you saying that the argument in the reply brief, we should not be considering that argument? Or do you concede it's appropriate for him to respond to the government's waiver argument that the government made in its opening brief? I think in as much as he's responding to the waiver argument and drawing a distinction between the two concessions made below, that is an appropriate response because the government did raise waiver in its responsive. Okay. To the extent he's arguing, oh, well, that's an assertive statement, Cody snitching, and that's itself a hearsay violation. That was not argued in his opening brief. He was focused on implied fact of his involvement in the robbery as hearsay, which is an argument that's completely separate from whether Cody snitching is an assertive statement, which, of course, it is. And then whether that was for the truth of the matter asserted and whether that would be prejudicial by itself. Are you saying that in addition to the point you just made, are you able to hear me? Yes. We're having a little trouble, Judge Barron. At least I am. Okay. I'm going to turn my video off for a second to see if that helps. Can you hear me better now? Yes. Okay. I apologize. Just so I understand both parts of your waiver point, if I follow it, you first said that your reading of the opening brief is that this contention about the Cody snitching statement is not even addressed in the opening brief. But if I understand it, you're separately saying that insofar as it was appropriate for him to make an argument in response to your waiver in the reply brief that puts the Cody snitching statement back on the table, the right understanding of what happened below is that he expressly agreed with the district court's conclusion that the Cody snitching statement was not being offered for the truth of the matter? That's exactly correct. So it's two different waiver arguments, one with respect to the district court and one with respect to his opening brief to this court. And even if the court doesn't want to rely on a waiver here, the claim is, I think, clearly not preserved because there was no argument to Judge Burroughs about the implied fact, which is the argument he's making in his opening brief, not being hearsay and needing a separate hearsay analysis. So we are on plain error review at best if the issue is not waived. And he can't show a clear, obvious error here because there's no precedent from this court applying Rule 801 to treat an implied fact, so not an asserted fact, but just one that's implied because the statement assumes that this fact is reality or suggests that the speaker believes this fact is true as hearsay. And the rule doesn't compel that interpretation here. In fact, the one case the government has seen from this court discussing implied fact hearsay in Rule 801, that's the Hensel case that's cited in the government's brief, found that there was no error because the rule says the burden of showing the assertive intent as to the implied fact falls on the person who's claiming that the assertive intent exists here at the defendant. And in Hensel, the defendant didn't even try to meet his burden, so there couldn't have been an error for the district court one way or the other because the issue had not been really put before the district court to decide. Here, too, the defendant never raised to the district court and didn't even try to suggest that Darius had an assertive intent as to implied fact of his involvement in the robbery. So the admission of the call simply cannot be a plain error under Rule 801. Thus, the court actually does not need to reach the merits of the implied fact argument under Rule 801, though the government's happy to discuss that if the court has questions about it. If hearing no questions, I'll go quickly to the jury charge claim. So here, the defendant acknowledges the court gave correct Pinkerton instructions, correct aiding and abetting instructions, and correct substantive instructions as to 924C. But his argument is this is a plain error because there was no as-applied version of the Pinkerton aiding and abetting instructions specifically as to brandishing and to discharging. And to that, I'd like to just respond with four points. First, as Judge Barron pointed out, in fact, the court actually did give an as-applied type instruction as to reasonable foreseeability and as to needing to have knowledge that the firearm would be brandished or discharged, which, of course, implies advanced knowledge under aiding and abetting. Second, his contention that there needs to be as-applied instructions tailored to each substantive offense to which Pinkerton and aiding and abetting can apply would, in this case, mean that the court would have needed to give eight versions of vicarious liability instructions because there's Pinkerton, there's aiding and abetting. Let me just ask you about that because I see what you're saying with respect to the aiding and abetting instruction. And that's that statement at the beginning of the what they say is before the transition occurs, there is a sentence which refers to knowledge with respect to the various iterations of the substantive crime, correct? That's what you're focusing on and saying that there was a correct aiding and abetting? Yes. Okay. And then there's a debate that occurs as to whether what happened after that suggests that there was more money in the state than there should have been. With respect to Pinkerton, is there anything more with respect to the Pinkerton instruction that is specific to the substantive crime in the way that that statement with respect to aiding and abetting is? And the reason I ask is because Rosemond does suggest that a statement may not be cured, may not solve the problem. And so I'm just trying to figure out with respect to the Pinkerton instruction, is there a light statement with respect to the Pinkerton instruction that's specific in the way that the statement you're pulling out with respect to aiding and abetting is? Yes. Sorry, I think I understand the question, although it was cutting out a little bit. So if you look at the jury instructions, page 1314 of the joint appendix, the court says under Pinkerton, the defendant can be found guilty if the government proves beyond a reasonable doubt that defendant conspired to commit the underlying crime and knew that was reasonably foreseeable that the underlying crime would be committed by a co-conspirator. Then for this offense, it must have been reasonably foreseeable to the defendant that a co-conspirator would use, carry, brandish, or discharge the firearm during the commission of the robbery. Again, this is known as Pinkerton liability period. So I think that's a counterpart to the would knew that would a gun would be used, et cetera, et cetera, for the aiding and abetting. So the instruction is there. I think his contention is, well, it's not really in the right place. I would have organized it differently. But, you know, we are on plain error review here. So we're looking at the charge as a whole and trying to understand, you know, does this sufficiently instruct the jury as to what the elements of these crimes are? And I point also to the fact of the verdict form, which I think it's cited on page 25 of the government's brief. But it asks the jury specifically, you know, do you find that the government has proven beyond a reasonable doubt that Giovanni Carter brandished or aided and abetted in the brandishing of the firearm in relation to that same crime of violence? And similarly, with respect to discharging, and this is clearly different than merely aiding and abetting the using or carrying portion, because that was a different question on the same page of the verdict form. So the verdict form asks them to separately consider aiding and abetting as to use or carry, aiding and abetting as to brandish, and aiding or abetting as to discharge. So to the extent there's any confusion after the charge, the verdict form really focuses the jury on how to put these different parts of the charge together as to brandishing, discharging, and the vicarious liability theories. As regards plain error, is it relevant in your view that the evidence in this case by the cooperating criminal here indicated that the defendant in this case turned over the gun to a co-conspirator and instructed them to shoot at the police? Yes. So independently of whether there is any clear or obvious error in these instructions, he cannot satisfy prong three here on plain error review, because the government's position is there was overwhelming evidence that both brandishing and discharging were reasonably foreseeable to this defendant, which would mean he would have been convicted anyhow, at least under the Pinkerton theory. So briefly, he's the leader. He planned this armed robbery. That's not only from Martin's testimony, but corroborated independently by this defendant's phone records that show he was the one who drove to this T-Mobile that morning before the robbery. He's casing the joint. He's the only one who's there. Then he drives back, etc. Then the evidence is that he drove his co-conspirators to, quote, go get right, which means getting guns to use in the armed robbery. Then he drives them back to Brockton to the T-Mobile, looks inside, says, now's the time to go hit it. And these guys all knew each other. One of them is his brother, and then he knows the others as well. They know the drill. He waits in the car. They go in, they brandish their firearms, they grab the phones, and they leave. And this court has said guns are tools of the trade for certain types of offenses, and I think this is a clear case. For this type of armed robbery, the purpose of having guns to go get right for this type of armed robbery is to brandish the guns, get quick compliance, hop in your getaway car, and escape. Then we have the eyewitness testimony from the co-conspirator in the car that this defendant encouraged the two shooters to shoot. He said, we got to get them off of us. Get the boys up off of us. And then in response, two of the people in the car more or less simultaneously start shooting. And again, that's not purely from Martin's testimony. That's the police officer Robin's testimony and the forensic evidence, too, that there's shots being fired by two people at the same time. Then, to clear up any ambiguity as to what he was asking them to do, he says, yeah, D, his brother Darius, yeah. So he's expressing approval for what they just did, shooting at the police. That's enough evidence, I think, for causing the discharge under aiding and abetting theory, but it's certainly enough for reasonable foreseeability. And, of course, if you look at the situation at large, he's the getaway driver. His job is to get them away. He knows that the other three are armed because, again, he's the one who took them to get armed in his car. They've been speeding up to a dangerous level, going through evasive driving maneuvers, and they can't shake the police. They don't know about the GPS, but that's likely why they've been unable to shake the tail. So they need to slow that officer down or they're going to prison. It is reasonably foreseeable, given all of these facts, and I think overwhelmingly so, that someone's going to shoot. So on those facts, I think, you know, even if the court doesn't want to engage with or thinks there might have been a problem with how the instructions were organized in this case, you know, there's still no plain error because he would have been convicted in any case. And this is not a close case. Follow-up, Judge Singal or Judge Barron? I just had one question on the sentencing. With respect to the sentencing, could you – I couldn't tell from your brief how much this distinction between adjustment and enhancement matters, but let's put aside that terminology for a second. Is there an argument that if that terminology is not significant, the sixth-level increase is nonetheless permissible, and if so, why, given the double-counting prohibition? Absolutely. So the issue here is whether the note, which applies to when there is a 924C conviction and then there's, you know, the issue of an underlying crime that's also being sentenced for here as a robbery, whether that note prohibits the official victim adjustment under 3A1.2, so that's the sixth level here that we're concerned about. So the note applies to specific offense characteristics for possession, brandishing, use, or discharge of an explosive or firearm, which is the same thing as weapon enhancements. And the official victim adjustment is neither a specific offense characteristic nor is it, quote, for possession, brandishing, or use or discharge of an explosive or firearm. So I think the second point is more obvious. The official victim adjustment is about the identity of the victim. There's nothing to do with firearms in that adjustment, if you read it. It doesn't matter how you victimize this official victim with firearms or not, either way. So that's why it's not for possession, brandishing, use, or discharge of a firearm. It's also not a, quote, specific offense characteristic, because those are in Chapter 2. So I think that's clear if you look at the Chapter 2 introductory commentary, which says each offense has a corresponding offense level and may have one or more, quote, specific offense characteristics that adjust the offense level upward or downward. And if you look for, as an example, to the robbery guideline, which applies here to B3.1, it says, A, base offense level 20, B, specific offense characteristics, and then lists a bunch of specific offense characteristics for robbery, one set of which is for use of weapons or explosives. So that's what specific offense characteristics are, and that Chapter 3 doesn't qualify. It's clear if you contrast the introductory commentary to Chapter 3. That says the following adjustments are included in this part because they may apply to a wide variety of offenses. So in other words, Chapter 3 adjustments are in Chapter 3 precisely because they are not limited to any specific offense the way the specific offense characteristics are. So that's the reason they are even in Chapter 3. And then furthermore, in terms of the language weapon enhancements that was added by Amendment 599, I point the Court to the reason for amendment that the Commission promulgated for Amendment 599, which says, This amendment expands the commentary in the application note to clarify under what circumstances defendants sentenced for violations of 924C, in conjunction with convictions for other offenses, may receive weapon enhancements contained in the guidelines for those other offenses. So it refers specifically to weapon enhancements as those contained in the guidelines for the underlying offenses, which, of course, only refers to Chapter 2 specific offense characteristics. Those are the ones that are in the offense specific guidelines, whereas Chapter 3, where the victim adjustment is, is untethered from any particular specific offense. So I think that makes clear that weapons enhancements in Amendment 599 means really the same thing as specific offense characteristics for firearms, etc. Thank you. Thank you, counsel. If you would mute. Mr. Solomon, you have rebuttal time. Thank you, Your Honor. So very quickly, back on the hearsay point, I think it's simply incorrect that at the oral argument when trial counsel made his concession, that all anyone was discussing was the codee snitching portion of the recording. In fact, immediately after the concession on which the government's relying, Mr. Sultan, the trial counsel said, that's fine, Your Honor, but with respect to that comment, basically tell Dio to keep his mouth shut. So clearly he's referring back to the two sentences that he had already conceded in his brief were not hearsay. Can you just zero in on that for a second? In that passage in the record below, when you say except for, is that a statement that except for that, in other words, is there a statement by counsel that that codee snitching statement is not hearsay? Yes, Your Honor. In the opposition to the motion in limine, he specifically pointed to that sentence as hearsay. In oral argument, what I understand the government is saying is that what happened is the district court said, fine, it's assertive statement, but it's not being offered for the truth. What did counsel for your client, I don't know if it was you or different counsel, say below to that point by the district court? I think that he didn't answer the question whether that part was hearsay. Instead, he said that the part that he thought the court was focusing on, because he quotes it, tell Dio to keep his mouth shut, that that part was not hearsay. He didn't expressly say that the second part of the statement was hearsay. My understanding is, but the district court said it's not being offered for the truth, it's just being offered for context. That's correct. Okay, is there an objection to that contention by the district court? Not based on what trial counsel understood the district court to be saying. What he understood the district court to be referring to was the first part, as we can tell. The government says to us that the record below shows that the district court separated out the two statements. Some was an instruction, some was not an instruction. As the part that was not an instruction and was an assertive statement, it said that can come in because it's not being offered for the truth. Is that wrong? I don't think the district court parsed it in quite that way. I think the district court saw the entire quoted portion or the recording to be an instruction and allowed it in as a whole. I don't think the district court parsed it in the way we're parsing it here today. I think the only reason we're parsing it here today is because of this waiver argument. The government just told us that the record shows that the district court treated the codee snitching statement differently and said it was not being admitted for the truth. Are you saying that did not happen? I don't recall in the record that happening in that way, Your Honor. I think the court was treating the entire passage as one and treating it as an instruction. That's why we framed the opening brief the way we did. It wasn't until this waiver argument came out that anybody parsed it quite as two sentences and what followed in the way we're doing it here in argument. I don't recall seeing in the record the district court breaking it up in quite that way. I think the district court treated it all as an instruction. I see that I'm out of time, so I will stop there. Thank you, Your Honor. Thank you, counsel. That concludes our argument in this case. Attorney Solomon and Attorney Eisenstadt, you should disconnect from the hearing at this time.